IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
(Southern Division)

| | |
|---|---|
| ALONZO HAYES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. <u>1:25cv262 TBM</u>-RPM |
| | ) |
| HUNTINGTON INGALLS INDUSTRIES, | ) |
| INC. | ) |
| dba HUNTINGTON INGALLS | ) |
| INCORPORATED, | ) |
| | ) |
| Defendant. | |

**PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff ALONZO HAYES ("Plaintiff" or "Mr. Hayes"), by and through the undersigned counsel and hereby brings this civil action pursuant to Title VII of the Civil Rights Acts of 1964 ("Title VII") as amended, 42 U.S.C. §2000 et seq and 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991 ("Section 1981") et seq against Huntington Ingalls Industries for race discrimination and retaliation.

**JURISDICTION & VENUE**

1. This Court has original jurisdiction over the subject matter of this civil action pursuant to 28 U.S.C. § 1331 (federal question), to hear federal claims pursuant to Title VII, and Section 1981.

2. Venue is proper in this judicial district under 42 U.S.C. 2000e-5(f)(3) as Plaintiff was employed by Defendant, through its Ingalls Shipbuilding division, at its facilities in Pascagoula, Mississippi at the time of the discrimination complained of, and the incidents and

decisions adverse to Plaintiff's employment that are the subject of this civil action were made in this judicial district.

3. All prerequisites to filing suit have been met.

## THE PARTIES

4. Plaintiff Alonzo Hayes is an African American male who resides in Vancleave, Mississippi. He was an employee of the Defendant in Pascagoula, Mississippi, at all times relevant to this litigation.

5. Huntington Ingalls Industries, Inc. ("Huntington," "HII" or "Defendant") owns the subsidiary Huntington Ingalls Incorporated. This subsidiary manages the Ingalls Shipbuilding division where the Plaintiff was employed. Huntington, the largest shipbuilding company in the country and "a global all domain defense provider." Huntington is comprised of three divisions: Newport News Shipbuilding, Ingalls Shipbuilding, and Mission technologies. Ingalls Shipbuilding is based in Pascagoula, Mississippi. The Defendant may be served through its registered agent, CT Corporation System, at 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

## STATEMENT OF CLAIMS

6. Prior to the filing of this Complaint, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"). Plaintiff was provided with a right-to-sue letter.

7. All conditions precedent to the institution of this lawsuit have been fulfilled.

8. Plaintiff Alonzo Hayes began working for Defendant as a Shipfitter at its Ingalls shipyard on October 3, 2024.

**ORIGINAL COMPLAINT**

9. From the commencement of his tenure, Foreman Harold Farley and Ship Sitter Kyle Sterling engaged in conduct that was demeaning to the Plaintiff, including declining to provide assistance with heavy equipment and excessively surveilling his bathroom and break periods.

10. On multiple occasions, Sterling took cookies that he had from the "break" room, placed them into the Plaintiff's personal bag, and departed while laughing, during which he referred to the Plaintiff as "too feminine" and made remarks concerning his perceived sexual orientation. This matter is of importance because food consumption is prohibited. Eating is also forbidden, as it directly contravenes Defendant's policy. Consequently, workers depart early and do not observe a designated lunch period. Breaks are permitted only at one's discretion; however, being caught eating constitutes a disciplinary violation that may result in a formal reprimand. Sterling was evidently trying to set up a scenario where the Plaintiff indirectly broke company policy. These kinds of actions were common and caused the Plaintiff to live in constant fear of unfair dismissal or reprimand.

11. Farley and Sterling employed racial slurs, including referring to the Plaintiff as a "n-gga" in the presence of colleagues. They consistently made derogatory remarks mocking his Black ethnicity and LGBTQ identity.

12. Plaintiff was also subjected to racial insults like "Oreo," which insinuates that he possesses external Black features but internally exhibits behavior associated with white individuals—an act that constitutes racial discrimination and shame related to racial identity.

13. Plaintiff endured racial slurs, mocking comments, and a pervasive atmosphere of hostility that was never remedied. When Plaintiff complained internally, Ingalls managers ignored or minimized his concerns and then terminated him, falsely accusing him of misconduct.

3

**ORIGINAL COMPLAINT**

14. On or around January 9, 2025, Plaintiff was subjected to harassment regarding a situation in which he had to acquire a tool. Farley threatened to write Plaintiff up despite prior notice that the Plaintiff did not possess the tool and was in the process of obtaining it. Kyle also informed Farley of this and even accompanied the Plaintiff via text message to retrieve the tool. Nonetheless, Farley continued to assert that he could dismiss Plaintiff at any time without cause and remarked, "They didn't need any sissies out there anyway."

15. That same day, after particularly egregious slurs and taunts, Plaintiff reported the harassment to Union Steward Tiffany Williams and HR Representative Maria Lopez via email. Rather than undergoing investigation, Farley escalated the harassment by falsely documenting performance deficiencies in write-ups, assigning the Plaintiff the most hazardous tasks without adequate equipment, and excluding him from team meetings.

16. On or around January 20, 2025, Farley confronted Plaintiff in the yard, again used a racial slur, and threatened to "make sure you're gone." He then promptly terminated Plaintiff's employment, allegedly due to accusations of insubordination.

17. Following termination, Farley and other supervisory personnel disclosed confidential information regarding Plaintiff's Human Resources complaints to coworkers. They also propagated unfounded rumors that Plaintiff "couldn't read or write" and exerted pressure on several employees to provide false testimonies in support of the termination.

18. Plaintiff continued to report these retaliatory actions to the company's Ethics Hotline on January 25, 2025, as well as through his EEOC charge. Nevertheless, the hostile conduct and defamation persisted, resulting in the Plaintiff being isolated from professional networks and suffering damage to his reputation within the industry.

4

**ORIGINAL COMPLAINT**

19. Following his complaint, Plaintiff suffered anxiety and emotional distress, for which he sought medical treatment.

## COUNT ONE: RACE DISCRIMINATION

20. Plaintiff repeats and re-alleges each of the foregoing paragraphs as if set forth fully herein.

21. Title VII prohibits discrimination in terms and conditions of employment based on race. Defendant subjected Plaintiff to unequal treatment, racial slurs, exclusion from work duties, and wrongful discharge because of his race.

22. Defendant's actions were intentional, willful, and taken with wanton disregard of Plaintiff's right to be free from discrimination under Section 1981.

23. As a direct result, Plaintiff suffered lost wages, lost benefits, emotional distress, and reputational harm.

## COUNT TWO: SEX DISCRIMINATION – SEXUAL ORIENTATION

24. Plaintiff repeats and re-alleges each of the foregoing paragraphs as if set forth fully herein.

25. Title VII's prohibition on discrimination based on sex encompasses discrimination against individuals because of perceived or actual sexual orientation. Defendant's agents repeatedly mocked Plaintiff's perceived sexual orientation, referred to him as "too gay," excluded him from social interactions, and used demeaning "gay" jokes in front of coworkers. Defendant terminated Plaintiff based on false allegations in retaliation for his opposition to this harassment. Plaintiff suffered economic and non-economic damages as a result.

## COUNT THREE: HOSTILE WORK ENVIRONMENT

5

**ORIGINAL COMPLAINT**

26. Plaintiff repeats and re-alleges each of the foregoing paragraphs as if set forth fully herein.

27. The repeated racial and sexual orientation–based slurs, public humiliation through the cookie incidents, excessive surveillance, and exclusionary conduct created a work environment that was objectively and subjectively hostile and abusive. Defendant knew or should have known of the hostile environment and failed to take prompt and effective remedial action. Plaintiff's ability to perform his duties was materially and adversely affected by the hostile work environment.

## COUNT FOUR: RETALIATION

28. Plaintiff repeats and re-alleges each of the foregoing paragraphs as if set forth fully herein.

29. Title VII prohibits retaliation against employees who oppose discriminatory practices. After Plaintiff reported the harassment on January 9, 2025, Defendant subjected him to intensified harassment, false performance write-ups, and ultimately unlawful termination on January 20, 2025. Defendant's adverse actions were causally connected to Plaintiff's protected activity.

30. Defendant's actions were intentional, willful, and taken with wanton disregard of Plaintiff's right to be free from discrimination and retaliation under Section 1981.

31. Plaintiff suffered damages, including lost wages, emotional distress, and reputational injury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that the Court enter an award and judgment in his favor, and against Defendant as follows:

**ORIGINAL COMPLAINT**

(a) awarding Plaintiff all expenses and costs, including attorneys' fees, incurred in connection with this action from Defendant;

(b) a declaratory judgment finding that the actions of Defendant violate Plaintiff's rights;

(c) An injunction and order permanently restraining Defendant from such unlawful conduct as outlined in this complaint;

(d) an order requiring Defendant to make Plaintiff whole by awarding him back-pay, compensatory, punitive, emotional, pre- and post-judgment interest, and/or nominal damages; and

(e) such other and further relief as the Court deems appropriate or that is necessary to make the Plaintiff whole.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Date:   August 20, 2025

Respectfully submitted,

*/s/ Keith B. French*
Keith B. French
MS Bar #:104628
**Keith B. French Law, PLLC**
401 E. Capitol St, Suite 515
Jackson, MS 39201
kfrench@peoplefirstfirm.com
Tel: 601-376-9306
Fax: 832-243-1927

**ATTORNEY FOR PLAINTIFF**

7

**ORIGINAL COMPLAINT**